**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **GETA BARR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 2:16-CV-1340-VEH** |
| | ) |
| **THE JEFFERSON COUNTY** | ) |
| **BARBER COMMISSION,** | ) |
| **FLORENCE JOHNSON, TRINA** | ) |
| **PAULDING, THE CITY OF** | ) |
| **CENTER POINT, THOMAS** | ) |
| **HENDERSON, and JOHN** | ) |
| **WATKINS,** | ) |
| | ) |
| **Defendants.** | ) |

---

**MEMORANDUM OPINION AND ORDER**

## I.     INTRODUCTION

Plaintiff Geta Barr ("Ms. Barr") initiated this action on July 18, 2016, in the

Circuit Court of Jefferson County, Alabama, alleging constitutional violations

associated with the closure of her business and revocation and non-renewal of her

business licenses. (Doc. 1-1). On August 17, 2016, this case was removed to

federal court. (Doc. 1). On September 26, 2016, three defendants, the Jefferson

County Barber Commission ("JCBC"), Florence Johnson ("Ms. Johnson"), and

Trina Paulding ("Ms. Paulding") (collectively and for the purposes of this opinion

only, the "Defendants"), filed a Motion To Dismiss.[1] (Doc. 4).

On September 27, 2016, Ms. Barr filed a Motion To Remand (doc. 7), to which the removing defendants responded on September 30, 2016 (doc. 9). The case was re-assigned to the undersigned on November 14, 2016, and on November 18, 2016, this Court denied the Motion To Remand and ordered briefing on the Motion To Dismiss. Defendants responded on November 28, 2016 (doc. 20), and Ms. Barr replied on December 5, 2016 (doc. 22). The Motion To Dismiss is now under submission.

For the reasons stated herein, the Motion To Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

## II.    STANDARD[2]

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules

---

[1] Three Defendants, City of Center Point, Thomas Henderson, and John Watkins, answered the complaint and did not file a Motion To Dismiss. (Docs. 3, 11). One other defendant, John Wood, has already been dismissed from this action *pro tanto*. (Doc. 18).

[2] Defendants move for dismissal pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Ms. Barr's claims "are unripe for adjudication and fail to state claims upon which relief can be granted." (Doc. 4 at 1). However, Defendants make no other mention of ripeness and fail to present any argument that this Court lacks jurisdiction over these claims. Accordingly, the Court construes Defendants' Motion as a Motion To Dismiss Ms. Barr's claims with prejudice pursuant only to Rule 12(b)(6).

of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III.   FACTUAL ALLEGATIONS IN THE COMPLAINT

The following pertinent factual allegations appear as stated in the Complaint:

5.    Plaintiff, Geta Barr, is an individual over the age of nineteen and [is a]

resident citizen of Jefferson County, Alabama who at all times pertinent to this Complaint was the majority member of Maxi Tax Resource LLC d/b/a Barr Sisters Barber & Style Shop I and d/b/a Barr Sisters Barber & Style Shop II; and was a licensee of the Jefferson County Barber Commission licensed to operate a barber shop and work as a journey barber in Jefferson County, Alabama.

6.    Defendant, the Jefferson County Barber Commission, is a county governmental entity comprised of three elected Commissioners with the power and authority to promulgate and enforce reasonable rules of sanitation and reasonable regulations for the conduct of barbers and barber shops within the territorial limits of Jefferson County, Alabama.

7.    Defendant, Florence Johnson, is an individual over the age of nineteen and a resident citizen of Jefferson County, Alabama who at all times pertinent to this complaint was a Commissioner and Chairman of the Jefferson County Barber Commission. This Defendant is sued in both her official capacity and in her individual capacity.

8.    Defendant, Trina Paulding, is an individual over the age of nineteen and a resident citizen of Jefferson County, Alabama who at all time pertinent to this complaint was an Inspector of the Jefferson County Barber Commission with the power and authority to arrest persons guilty of violating health and sanitations laws or having violated the printed rules and adopted regulations of the Jefferson County Barber Commission. This Defendant is sued in both her official capacity and in her individual capacity.

14.   Plaintiff, Geta Barr, (hereinafter BARR) originates from Kingston Jamaica and by trade is a hair-stylist. After immigrating to the United States and spending a few years in Miami, Florida, working as a hair-stylist, BARR settled in Center Point, Alabama.

15.   BARR obtained her cosmetology license from the Alabama State Board of Cosmetology as well as her journey barber and barber shop licenses from the Jefferson County Barber Commission. She also obtain[ed] her business license from the City of Center Point, and on or about February 10, 2009, Barr open[ed] a beauty salon / barber shop located at 1849 Center Point

Parkway, Center Point, AL 35215, called Barr Sisters Barber & Style Shop.

16. Over the years BARR's business prospered and in January of 2014 she obtained another business license from the City of Center Point and open[ed] a barber shop located at 1687 Center Point Parkway, Center Point, Alabama 35215, called Barr Sisters Barber & Style Shop II.

17. BARR continue[ed] to operate both of her hair salons uneventfully until on or about August 19, 2014 when Trina Paulding (hereinafter PAULDING), an inspector and employee of the Jefferson County Barber Commission (hereinafter Commission), wrote BARR a Citation for Violation for allegedly having three (3) student barbers working without having a journey barber present to supervise their activities.

18. Inspector PAULDING summarily levie[d] a fine in the amount of $50 for the alleged violation of the Commission's printed rules and demand[ed] that BARR pay the fine by August 25, 2014 before 2 p.m.

19. On or about August 21, 2014, Kay Wallace, (hereinafter WALLACE), another inspector and employee of the Commission, returned to BARR's business and issued her another Citation for Violation for, again, allegedly having student barbers working without a journey barber present and levie[d] another fine in the amount [of] $50, but WALLACE d[id] not indicate when the amount was due to be paid.

20. BARR did not pay the $100 in Commission fines by August 25, 2014.

21. On August 25, 2014, inspector PAULDING returned and issued BARR another Citation for Violation demanding she appear before the Commission on August 26, 2014 at 9:00 A.M. to provide names of all the students working in her shop and stating that a failure to report would result in the closing of her barber shop. However, no mention was made in the Citation of any fines.

22. On August 26, 2014, BARR appeared at a regular meeting before the Commission. At the meeting BARR requested to have her attorney present before she answered any questions pertaining to her business. The

Commission agreed and allowed BARR to return the following week on September 3, 2014 with her attorney.

23. Notwithstanding the Commission's express agreement to re-schedule the meeting, after BARR left, they sent inspector PAULDING to shut down both of BARR's places of business located in Center Point, Alabama.

24. On August 26, 2014, PAULDING enlisted the assistance of the Mayor of Center Point, Thomas Henderson, (hereinafter HENDERSON) who was reportedly more than happy to chain and lock the doors to BARR's businesses.

25. On August 26, 2014, HENDERSON dispatched John Wood, (hereinafter WOOD) a laborer with the City Inspection Department, along with six (6) police cruisers to evict everyone and chain-lock the doors to both of her businesses located at 1849 Center Point Pkwy address and1687 Center Point Pkwy.

26. After shutting down both of her businesses, WOOD issued BARR a Notice of Violation from the City of Center Point for allegedly operating a business in the City Limits without a license.

27. On September 3, 2014, BARR returned with her attorney to the Commission to resume her meeting. At its conclusion, the Commission assessed BARR with a fine in the total amount of $250 and required her to sign a document stating that she would comply with rules and regulations of the Commission.

28. BARR did not admit fault but agreed to sign the document and returned later that afternoon to make payment in full.

29. On or about September 4, 2015, the City of Center Point removed the chains and locks from to BARR's business doors and allowed her to her to re-open at both locations.

30. On or about September 12, 2014, BARR received a notice in the mail from the City of Center Point advising her that a Public Hearing had been set for

October 9, 2014 to "discuss the revocation of her business licenses."

31.    On or about October 9, 2014, BARR appeared at the City of Center Point Public Hearing with her attorney and provided documentary proof that she had proper business and occupational licenses to operate a barber shop in the City of Center Point.

32.    Upon seeing BARR was in compliance with their licensing ordinance, and without providing BARR prior notice of any other allegations affecting her business licenses, the City Council then questioned BARR about various signs on her buildings and then verbally demanded that she make application for certain sign permits and/or remove other signs from her buildings. The council then gave BARR until October 17, 2014, to comply with the City's signage ordinance.

33.    Prior to October 17, 2014, BARR complied with the City's demands by applying and paying for certain sign permits and removing other allegedly non-conforming signs from her barber shops.

34.    On October 17, 2014, however, and without prior warning, the City of Center Point Building Inspector, John Watkins, (hereinafter Watkins) taped a Notice to Cease and Desist Operation of Business on the window of BARR's business located at 1687 Center Point Parkway, and he informed BARR that her business licenses had been revoked. BARR protested and asked WATKINS to leave because she had done nothing wrong. WATKINS was unmoved and demanded that everyone leave the building; he then proceeded to force her to shut- down by chain locking the doors to both of her businesses.

35.    Without giving BARR any prior written notice, the City of Center Point conducted another Public Hearing on October 23, 2014 to further discuss the revocation of BARR'S business licenses.

36.    At the October 23, 2014 meeting, despite already having shut down BARR'S businesses, and telling BARR that her licenses had been revoked on October 17, 2014, the City Council passed a resolution requiring BARR "to present all required information" by October 31, 2014, at 1:00 P.M. or

her business licenses would be revoked.

37.     After pleading with the defendants, BARR convinced the City of Center Point to remove the chains and locks from her business doors on or about October 24, 2014.

38.     On October 31, 2014, at the City of Center Point's demand and facing further threat of shutting her business down, BARR produced all of her all tax records for the previous four (4) years to the City of Center Point.

39.     On October 31, 2014, BARR ask[ed] Mayor HENDERSON for an extension to provide any additional necessary tax records. HENDERSON, however, refused to assist BARR and told her that the order has already gone out to revoke her business licenses and if she were to enter either property that she would be arrested for trespassing.

40.     BARR determined that no matter what she did, she would never be able to re-open her businesses in the City of Center Point. And, on or before January 31, 2015, BARR made application with the Jefferson County Barber Commission to open a new barber shop located in Roebuck, Alabama and to renew her journey barber license.

41.     Although the Commission granted BARR's barber shop application, the Commission refused to issue BARR a renewal journey barber license and failed to provide her with notice and a hearing before making its decision not to renew her license.

(Doc. 1-1 at 3-13).

## IV.     DISCUSSION

Ms. Barr's Complaint asserts sixteen separate counts claiming violations of both federal and state law. Of those counts, Counts I-VI are implicated by the pending Motion To Dismiss and allege as follows:

<u>Count I</u>: violations of procedural due process rights "secured by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment" against the JCBC (doc. 1-1 at 13-16);

<u>Count II</u>: violations of "liberty" rights "secured by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment" against the JCBC (doc. 1-1 at 16-19);

<u>Count III</u>: Failure to adequately hire, train, discipline, and supervise against Ms. Johnson (doc. 1-1 at 19-21);

<u>Count IV</u>: violations of procedural due process rights "secured by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment" against Ms. Paulding in her individual capacity (doc. 1-1 at 21-23);

<u>Count V</u>: violations of "liberty" rights "secured by 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment" against the Ms. Paulding in her individual capacity (doc. 1-1 at 23-26);

<u>Count VI</u>: Intentional interference with a business relationship against Ms. Johnson and Ms. Paulding in their individual capacities (doc. 1-1 at 26-27).

## A.     <u>Equal Protection Claims</u>

Defendants claim that, as Ms. Barr's Complaint makes no reference "to race, gender, or any other protected class," she has failed to make out a *prima facie* claim under the Equal Protection Clause of the Fourteenth Amendment. (Doc. 4 at 6). In her Response, Plaintiff concedes that <u>all</u> of her equal protection claims are due to be dismissed:

> To any extent Plaintiff's Complaint can be interpreted as asserting a violation of her civil rights under the equal protection clause of the 14th Amendment to the U.S. Constitution, it is the result of a typographical error.

(Doc. 20 at 4 n. 2) (emphasis added). Accordingly, all of Ms. Barr's equal protection claims against all defendants are due to be **DISMISSED WITHOUT PREJUDICE**.

## B.    Due Process Claims

Ms. Barr alleges that the JCBC and Ms. Paulding deprived her of due process of law as required by the 14th Amendment and in violation of 42 U.S.C. §1983. The Due Process Clause provides for protection in two forms, substantive due process and procedural due process, and a "violation of either of these kinds of protection may form the basis of a suit under section 1983." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc) (holding that alleged deprivations of state-created property interests fail to establish a substantive due process claim). Ms. Barr has alleged violations of both substantive and procedural due process, and the Eleventh Circuit's decision in *McKinney* controls this Court's differentiation between, and discussion of, substantive and procedural due process. The Court will first address the issue of substantive due process.

### 1.    Substantive Due Process

Counts II and V asserts violations of Ms. Barr's "liberty rights" pursuant to Section 1983 against JCBC and Ms. Paulding, respectively.[3] Ms. Barr has characterized her right to operate her business as a fundamental "liberty" interest that is entitled to substantive due process protection. Defendants have moved to dismiss Ms. Barr's substantive due process claims on the basis that a barber license is a state-created property right rather than a fundamental right. Based on a review of the case law in this Circuit, the Court agrees that Ms. Barr has failed to state a substantive due process claim sufficient to withstand the Defendants' Motion To Dismiss.

The substantive component of the Due Process Clause protects only those interests that are "fundamental" and "implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556 (citing *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937)). Substantive due process protection over a right means that the right is protected "against certain government actions regardless of the fairness of the procedures used to implement them." *Id.*(internal citations omitted). Though most of the rights enumerated in the Bill of Rights are

---

[3] Though not explicitly stated in the Complaint, Ms. Barr clarifies in her Response that she is asserting "substantive due process violations against the Commission in Count II of her complaint." (Doc. 20 at 11). The Court also construes Count V - which mirrors Count II's language and caption - as asserting substantive due process violations against Ms. Paulding. (Doc. 1-1 at 23-26).

considered fundamental, as well as certain other unenumerated rights, the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, __ , 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992)).

Ms. Barr characterizes her substantive due process claims as deprivations of her liberty interests. The Court, however, has a duty to independently examine her causes of action for what they are in light of the facts alleged. *McKinney*, 20 F.3d at 1560; *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Contrary to Ms. Barr's construction, her Complaint alleges deprivations of a property, not a liberty, interest. *See* (Doc. 1-1 at 17, 24) ("BARR's constitutionally protected liberty interests incorporate her ability to pursue and engage in h[er] occupation as a barber, to operate a barber shop, and all of the benefits of same[.]"); *id.* at 18, 25 (alleging Defendants acted "in a manner so as to be construed as revoking or suspending BARR's occupational licenses" and "in a manner so as to shut down

Barr's businesses on August 26, 2014 without legal authority"). Accordingly, the Court construes Ms. Barr's substantive due process claims as those of a vested property right in her barber licenses.

The Due Process Clause protects property interests created by "existing rules or understandings that stem from an independent source such as state law- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2708, 33 L. Ed. 2d 548 (1972)); *see also Sullivan Properties, Inc. v. City of Winter Springs*, 889 F. Supp. 587 (M.D. Fla. 1995) ("Courts look to the source of the rules providing benefits to determine whether a claimant possesses a property interest in a particular benefit or entitlement."). As the Eleventh Circuit stated in *McKinney*,

> <u>areas in which substantive rights are created only by state law</u> (as is the case with tort law and employment law) <u>are not subject to substantive due process protection under the Due Process Clause</u> because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)(Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.

20 F.3d at 1556 (emphasis supplied).

In this case, the property right in question is a right created by the laws of Alabama that authorize the licensing of barber shops in Jefferson County. *See* Ala. Code § 45-37-40.[4] Ms. Barr has alleged no more than a deprivation of her barber license, a property interest created by state law, and therefore has failed to establish a substantive due process violation. Accordingly, as Ms. Barr's property interest in her barber license is protected only by procedural due process, her allegations of substantive due process violations in Counts II and V are due to be **DISMISSED WITH PREJUDICE**.

2.    <u>Procedural Due Process</u>

Ms. Barr contends she was denied procedural due process by JCBC and Ms. Paulding for identical reasons, namely that each of them (1) failed to serve her

---

[4] Ala. Code § 45-37-40 states as follows:

It shall be unlawful for any person, partnership, association, or corporation to act as a barber, a barber teacher, an apprentice barber, a scalp specialist, house barber, or to operate a barber college, barber shop, or other like business, or to advertise or assume to act as such in any county within this state having a population of 400,000 or more according to the last or any subsequent federal decennial census <u>without first having obtained a license issued by the barber commission of the county wherein such act is done or sought to be done</u>. No partnership, association, or corporation shall be granted a license unless every member of officer of such partnership, association, or corporation, who actively engages in the barber business, barber college, or like business of such partnership, association, or corporation, shall hold a license as a barber, issued pursuant to this part. It shall also be unlawful for anyone to violate this part.

(emphasis supplied).

with notice of the charges made against her 20 days prior to her August 2014 hearing; (2) deprived her of the right to appear with counsel at the hearing; (3) revoked or suspended her occupational license without a meaningful pre-deprivation hearing, without legal authority, and without notice; (4) imposed illegal fines in excess of the statutory limits; and (5) refused to issue her a renewal journey barber license, without providing notice and without a pre- or post-deprivation hearing. (Doc. 1-1 at 14-16, 21-23).

Defendants have moved to dismiss Ms. Barr's procedural due process claims on three grounds: (1) Ms. Barr does not dispute she was in violation of the law; (2) she was "provided multiple hearings, had an attorney present, failed to object to the hearing, and voluntarily paid all fines"; and (3) pursuant to *McKinney*, adequate state remedies – namely, a writ of mandamus and an appeal to the Circuit Court of Jefferson County – existed to remedy any procedural violation. Because this Court agrees that there were adequate state remedies available to Ms. Barr, the Court need not address Defendants' first two arguments.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)); *Cryder*

*v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994) ("Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest.").

As the Eleventh Circuit has explained,

> Although the Due Process Clause generally requires notice and an opportunity to be heard *before* the government seizes one's property, *see, e.g., Quik Cash Pawn & Jewelry, Inc. v. Sheriff of Broward County*, 279 F.3d 1316, 1322 (11th Cir.2002), the Supreme Court has "rejected the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property." *Parratt v. Taylor*, 451 U.S. 527, 540–41, 101 S.Ct. 1908, 1915–16, 68 L.Ed.2d 420 (1981) (noting that its rejection of such a rule "is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available"), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

*Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009) (emphasis in original).

To establish a procedural due process claim, the plaintiff must show (1) "a deprivation of a constitutionally-protected liberty or property interest"; (2) state action; and (3) constitutionally inadequate process. *Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1236 (11th Cir. 2003); *Artistic Entm't, Inc. v. City of Warner Robbins*, 134 F. App'x 306, 309 (11th Cir. 2005) (same). Even if a deprivation occurs, there is no procedural due process violation unless the state "refuses to make available a means to remedy the deprivation." *McKinney*, 20 F.3d

at 1563; *see also Foxy Lady*, 347 F.3d at 1238 ("[E]ven if a procedural deprivation

exists ..., such a claim will not be cognizable under § 1983 if the state provides a

means by which to remedy the alleged deprivation."); *Cotton v. Jackson*, 216 F.3d

1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate

procedures to remedy the otherwise procedurally flawed deprivation of a protected

interest that gives rise to a federal procedural due process claim.").

As the Eleventh Circuit observed in *Cotton*,

[t]his rule (that a section 1983 claim is not stated unless inadequate state
procedures exist to remedy an alleged procedural deprivation)
recognizes that the state must have the opportunity to remedy the
procedural failings of its subdivisions and agencies in the appropriate
fora–agencies, review boards, and state courts before being subjected to
a claim alleging a procedural due process violation.

*Id.* at 1331 (quotation marks omitted); *see also Reams*, 561 F.3d at 1266 (citing

*Horton v. Bd of Co. Com'rs of Flagler Co.*, 202 F.3d 1297, 1300 (11th Cir. 2000)

(no federal procedural due process violation under *McKinney* if state courts

"generally would provide an adequate remedy for the procedural deprivation the

federal court plaintiff claims to have suffered")). The state's remedial process

"need not provide all relief available under Section 1983; as long as the remedy

'could have fully compensated the [claimant] for the property loss he suffered,' the

remedy satisfies procedural due process." *McKinney*, 20 F.3d at 1564 (citing

*Paratt*, 451 U.S. at 544, 101 S. Ct. at 1917).

Defendants have presented two arguments that an adequate state procedure existed to remedy Ms. Barr's alleged procedural violations. First, Defendants assert that a writ of mandamus was a remedy available to Ms. Barr. (Doc. 4 at 5-6). However, they fail to cite to *any* authority under *Alabama* law to support their assertion, citing only to an Eleventh Circuit case applying *Georgia* mandamus law. *See Cotton*, 216 F.3d at 1332-33 (determining that Georgia's mandamus procedure would provide an adequate post-deprivation remedy). Accordingly, Defendants' underdeveloped[5] argument that a writ of mandamus was available under Alabama law is not sufficient in and of itself to dismiss Ms. Barr's procedural due process claims.

However, Defendants' failure to adequately develop this line of argument does not mean that there were no adequate state procedures available. A barber

---

[5]  The Court notes that, under Alabama law, one seeking a writ of mandamus must show:

"(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (2) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." *Ex parte Edgar*, 543 So. 2d 682, 684 (Ala. 1989); *see also Ex parte Hudson*, 562 So. 2d 248, 250 (Ala. 1990). Alabama courts will issue a writ of mandamus to require a public official to do a ministerial act that the official is legally bound to perform. *Taylor v. Troy State Univ.*, 437 So.2d 472, 474-75 (Ala. 1983).

*Nicholson v. Moates*, 135 F. Supp. 2d 1185, 1191 (M.D. Ala. 2001). The Defendants failed to cite to this or any authority under Alabama law to demonstrate that a writ of mandamus was available to Ms. Barr.

shop licensee like Ms. Barr who is adversely affected by an order or action of the

JCBC is entitled to seek judicial review in state court pursuant to the "judicial

safety valve"[6] of Ala. Code § 45-37-40.04(e), which states as follows:

> If the commission shall determine that any applicant is not qualified to receive a license, or that any licensee is guilty of a violation of any of this part, a license shall not be granted, or the license shall be suspended or revoked, as the case may require. Upon request of the applicant or licensee in writing, the commission shall furnish the party with a definite statement of its findings of facts and its reason or reasons for refusing to grant the license or for its suspension or revocation of the license. <u>The findings of the commission may be appealed to the circuit court of the county in which the principal office of the commission is located, provided an appeal is taken within 30 days after final determination of the commission</u>. Any person desiring to appeal under this subsection shall file with the commission or some member thereof, a notice in writing that he or she appeals to the circuit court, with at least two solvent sureties payable to the county wherein the case will be tried, conditioned to prosecute such appeal to effect, and upon failure to do so, to pay all costs and damages which may be taxed against him or her by the circuit court on appeal. The bond to be approved by the circuit clerk of the county and any cause so appealed shall be tried de novo in circuit court.

(emphasis supplied). "Inherent in [the] power to review is the power to remedy

deficiencies and to cure violations of due process." *McKinney*, 20 F.3d at 1563. In

this case, the ability to appeal to state court more than satisfies the requirement

that the state provide a remedy. *See Cotton*, 216 F.3d at 1331 ("[C]ertiorari [to the

---

[6] *See Reams*, 561 F.3d at 1267 (affirming the district court's dismissal of procedural due process claims on the basis that post-deprivation judicial review in state court served as a "judicial safety valve," foreclosing any procedural constitutional challenges).

state courts] is generally an adequate state remedy.").

Further, it makes no difference whether or not Ms. Barr availed herself fully of this remedy. As the Eleventh Circuit has explained,

> The *McKinney* rule is not micro in its focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks to the existence of an opportunity - to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the remedy or attempted to do so.

*Horton*, 202 F.3d at 1300; *see also McKinney*, 20 F.3d at 1565 ("The fact that [the plaintiff] failed to avail himself of the full procedures provided by state law [i.e. the post-termination remedies] does not constitute a sign of their inadequacy."). Accordingly, Ms. Barr had available remedies under state law sufficient to redress her alleged procedural due process violations.

In so holding, the Court does not need to reach the question of whether there were other potential courses of action available under Alabama law. It suffices that the state provided at least one adequate process for addressing Ms. Barr's complaints. *Flint Elec. Membership Corp. v. Whitworth*, 68 F.3d 1309, 1314 n.6 (11th Cir. 1995), *modified*, 77 F.3d 1321 (11th Cir. 1996).

Accordingly, as Ms. Barr has failed to make out a *prima facie* claim for a

procedural due process violation under Section 1983 against either the Jefferson County Barber Commission or Ms. Paulding, Counts I and IV are due to be **DISMISSED WITH PREJUDICE**.

### C.    State Law Claims

In addition to her federal due process claims, Ms. Barr has also asserted two state law claims. In Count III, she brings a claim against Ms. Johnson for her alleged failure to adequately hire, train, discipline, and supervise. (Doc. 1-1 at 19-21). In Count III, she brings a claim against Ms. Johnson and Ms. Paulding in their individual capacities for intentional interference with a business relationship. *Id.* at 26-27.

#### 1.    Negligent Hiring Claim (Count III)

Defendants move to dismiss Ms. Barr's negligent hiring, retention, training, and supervision claim in Count III on the basis that "Alabama law does not recognize such a cause of action." (Doc. 4 at 6). In repsonse, Ms. Barr concedes that this type of claim may not be maintained against Ms. Johnson in her individual capacity, but argues that a viable claim remains against her in her official capacity. As another district court within this Circuit has observed,

> Plaintiff's Negligent Hiring, Training and/or Supervision Claim
> is also due to be dismissed in its entirety. Alabama does not recognize
> a cause of action for a supervisor's negligent training or supervision of

a subordinate. *See e.g.*, *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1312 (S.D. Ala. 2011) ("Alabama law does not recognize a cause of action against a supervisor or municipality for negligent training or supervision."); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314–15 (S.D. Ala. 2001) (dismissing a negligent retention, training, and supervision claim against a municipality because "Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate....").

In a similar action in the Middle District of Alabama, the court granted summary judgment in favor [of] a city police chief on a state law claim for negligent training, supervision, and retention. *See Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1262 (M.D. Ala. 2010) (emphasis added). The *Borton* court reached its conclusion after citing the general rule that a police chief could not be liable for negligent training or supervision because "no such cause of action exists under Alabama law...." *Borton*, 734 F. Supp. 2d at 1258 (citing *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1054–58 (S.D. Ala. 2007)); *see also Crutcher v. Vickers*, 2012 WL 3860557, *13 (N.D. Ala. 2012). Accordingly, Plaintiff's claim for negligent hiring, training, and supervision fails to state [a] claim upon which relief can be granted and is due to be dismissed.

*Lucio v. City of Tarrant, Ala.*, 2014 WL 3543696, at *3 (N.D. Ala. July 16, 2014)

(Proctor, J.) (emphasis supplied). Put similarly by another district court within this

Circuit,

Second, as this court previously has observed, no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate. *Cornelius v. City of Andalusia*, No. 06cv312, 2007 WL 4224036, at *5 (M.D. Ala. Nov. 28, 2007) (citing *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314-15 (S.D. Ala. 2001)); *see also Styron v. City of Foley*, No. 03-0572, 2005 WL 3098926, at *4-5 (S.D. Ala. Nov. 18, 2005). Ms. Borton has not cited any authority from any state or federal court

contradicting or rejecting the finding in *Ott*. The court also has not located any such authority. *Accord Ott*, 169 F. Supp. 2d at 1314 ("The plaintiffs have identified, and the Court has located, no authority for the proposition that such a cause of action exists."). To the contrary, other federal district courts in Alabama have followed in *Ott*'s footsteps. *See Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1057-58 (S.D. Ala. 2007) (Police chief could not be liable for negligent training or supervision because, as explained in *Ott*, "no such cause of action exists under Alabama law" and, therefore, the claim also could not proceed against the city "since its liability, if any, flows derivatively from its employee."); *McLaurine v. City of Auburn, Ala.*, No. 06cv1014, 2007 WL 1548924, at *3 n. 5 (M.D. Ala. 2007) (adopting magistrate judge's recommendation that favorably cited *Ott* ). Accordingly, Ms. Borton has not demonstrated that Alabama law recognizes her cause of action for negligent training and supervision against the City, and the weight of authority does not support her claim.

*Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258-59 (M.D. Ala. 2010)

(Watkins, J.).

The only authority Ms. Barr cites to support her contention that such a cause of action exists is an article from a state bar article published in 1994. *See* (Doc. 20 at 15) ("In Alabama the law is replete with such claims against an employer for negligent[] hiring, training and supervision of an employee and the cause of action has been recognized since as early as 1910. 55 Ala. Law. 96 (March 1994)."). She has failed to cite to any case law to support her claim that Alabama law recognizes the cause of action for negligent training and supervision brought against Ms. Johnson in Count III, regardless of whether the claim is brought in an individual

or official capacity. Accordingly, the Motion is due to be **GRANTED** as to the claims in Count III. Those claims will be **DISMISSED WITH PREJUDICE**.

2.    <u>Intentional Interference with Business Relations (Count VI)</u>

In Count VI, Ms. Barr alleges that Ms. Johnson and Ms. Paulding intentionally interfered with her business relationship with her clientele and apprentice barbers. (Doc. 1-1 at 26-27). Defendants argue that Count VI must be dismissed as it alleges the same grounds for relief as the procedural due process argument in Count I. Their argument for dismissal, in its entirety, is as follows:

> Finally, with regard to Count 6 of the Complaint it is a mere restatement of Count 1 and due to be dismissed with the remaining counts.

(Doc. 4 at 7). This is the epitome of an underdeveloped and cursory argument. As the Plaintiff points out,

> Count VI of Plaintiff's Complaint is against Florence Johnson and Trina Paulding in their individual capacities for having intentionally interfered with the business relationship by and between Plaintiff, her clientele and apprentices. Defendants make a veiled statement to dismiss Count VI for, purportedly, being "a mere restatement of Count 1 and due to be dismissed with the remaining counts." Defendants, however, fail to assert any legal or factual basis to substantiate their argument. Further, it is unclear how Defendants suppose Count VI (Intentional Interference with a Business Relationship) is merely a restatement of Count I (Violation of Plaintiff's Due Process Rights against the Jefferson County Barber Commission). The two counts allege different causes of action against different named defendants with different grounds for relief. Hence Count VI is plainly and clearly a different cause of action separate and distinct from Count I, and Defendants raise no cognizable

grounds to substantiate its dismissal.

(Doc. 20 at 16). The Court agrees and further notes that claims of tortious interference with business relations are cognizable under Alabama law. *See, e.g.*, *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 7 (Ala. 2009) (setting out the elements for a tortious interference with a business relationship claim and holding that those elements do not require a showing of fraud, force, or coercion); *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 459 (Ala. 2004) (discussing the justification element of a tortious interference with business relations claim).

Accordingly, the Motion To Dismiss is due to be **DENIED** as to Count VI.

## V.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows: (1) the Motion To Dismiss is hereby **GRANTED** as to all equal protection claims asserted in the Complaint, and such claims are hereby **DISMISSED WITHOUT PREJUDICE**; (2) the Motion To Dismiss is hereby **GRANTED** as to Counts I-V, and all claims contained in Counts I-V are hereby **DISMISSED WITH PREJUDICE**; (3) in all other respects, the Motion To Dismiss is **DENIED**; and (4) as there are no remaining claims pending against the Jefferson County Barber Commission, it is hereby **TERMINATED** as a party defendant.

**DONE** and **ORDERED** this the 25th day of April, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge