# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GETA BARR**, ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 2:16-CV-01340-CLM |
| ) | |
| **JEFFERSON COUNTY BARBER** ) | |
| **COMISSION, et al.,** ) | |
|     **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Geta Barr sued the Jefferson County Barber Commission (the JCBC), Florence Johnson, Trina Paulding, the City of Center Point, Thomas Henderson, John Wood, and John Watkins for shuttering her beauty salon and barbershop businesses in 2014. The Eleventh Circuit reversed this court's dismissal of Barr's procedural due process claims (doc. 87-1). So, upon remand, this court reinstated the JCBC as a defendant. It also allowed Barr and the JCBC, Johnson, and Paulding (the JCBC Defendants) to cross move for summary judgment.

For the reasons stated within, the court **DENIES** Barr's motion for partial summary judgment (doc. 106) and **GRANTS in part** and **DENIES in part** the JCBC Defendants' motion for summary judgment (doc. 108).

# BACKGROUND

## I. Statement of the Facts

Barr, a small business owner originally from Jamaica, operated a barbershop at 1687 Center Point Parkway and a beauty salon and tax preparation business at 1849 Center Point Parkway. The JCBC regulates the field of barbering in Jefferson County, Alabama. But Barr contends that the Alabama State Board of Barbering and Cosmetology is the entity with authority to regulate beauty salons.

On August 19, 2014, JCBC inspector Trina Paulding came to inspect Barr's barbershop. When Paulding arrived, she discovered student barbers at the shop without Barr. So Paulding issued Barr a $50 citation for having students at the shop without a journeyman barber present to oversee them. Barr asserts Paulding wrongly cited her because her student Dewayne Smith and his friends were merely sitting in chairs, not cutting hair. A few days later, Kay Wallace, another JCBC employee, issued Barr a citation for having a student barber braid hair without supervision.

Four days later, Paulding returned to Barr's barbershop with a written citation that said Barr "[n]eed[ed] to report to the Barber Commission office on Tuesday 8-26-14 between 9:30 AM and 10:00 AM" with a list of all student barbers working in her shop. Doc. 106-6 at 2. Barr thought that she would only be meeting with Wallace, but when she arrived at the JCBC, Wallace introduced her to the JCBC commissioners who began to ask her questions. Barr asked that the JCBC postpone

the meeting until she could obtain counsel, and the commissioners told Barr that the JCBC would reschedule the meeting.

But, after Barr left the meeting, Paulding showed up at Barr's businesses with Center Point employees, who chain locked the doors. According to Barr, Wallace told her that Center Point would remove the locks if she paid the JCBC $250. So on September 4, Barr and her attorney met with the commissioners, and she paid the $250 fine. Center Point then removed the locks.

But Barr's victory was short-lived. Center Point shut down her businesses two more times: once on October 17, then again on October 31. At that point, Barr decided to leave Center Point. She applied for a new license to operate in Roebuck, which the JCBC granted.

## II. Procedural History

In July 2016, Barr filed this § 1983 action in the Circuit Court of Jefferson County, Alabama. Defendants timely removed the case based on federal question jurisdiction. In April 2017, this court granted in part a motion to dismiss filed by the JCBC Defendants and dismissed the JCBC as a defendant. Doc. 35. In May 2018, the court granted the Center Point Defendants summary judgment as to the remaining federal claims and remanded the state law claims to state court. Docs. 76 & 77. Barr appealed, and the Eleventh Circuit reversed.

Upon remand, this court reinstated the JCBC as a party and allowed Barr and the JCBC Defendants to cross move for summary judgment because the JCBC Defendants had not moved for summary judgment when the Center Point Defendants had. Doc. 100. Following the filing of the cross motions for summary judgment, it emerged that Barr had filed for Chapter 7 bankruptcy. So the court substituted the bankruptcy trustee, Andre' Toffel, as the plaintiff. Doc. 126.[1]

## STANDARD

In considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] For ease of reference, even though the bankruptcy trustee is now litigating this case, the court calls Barr the plaintiff throughout this memorandum opinion and order.

# ANALYSIS

Barr moves for partial summary judgment on the aspect of her procedural due process claims related to the initial closure of her business. The JCBC Defendants have moved for summary judgment on Barr's procedural due process; intentional interference with business relationship; and negligent hiring, training, and supervision claims. The court addresses each claim in turn.

**I.    No party is entitled to summary judgment on the procedural due process claims.**

The court first addresses Barr's procedural due process claims (Counts 1 and 4) and starts with JCBC's arguments.

**A. The JCBC Defendants are not entitled to summary judgment.**

To make out a procedural due process claim, a plaintiff must show: "(1) a deprivation of constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). The JCBC Defendants make four arguments for why the court should summarily dismiss Barr's procedural due process claims.

1. <u>'It wasn't us'</u>: The JCBC Defendants first argue that they cannot be liable because Center Point employees—not the JCBC Defendants—padlocked the doors to Barr's businesses. But this argument ignores the evidence that Center Point closed Barr's businesses at the JCBC Defendants' request. Although Paulding did not physically padlock Barr's businesses, she was present when the Center Point

5

employees did so. And Center Point allowed Barr back into her businesses only after she paid a fine to the JCBC. A reasonable juror could view these facts and conclude that the JCBC Defendants controlled the closure of Barr's businesses and thus deprived Barr of her property interest.

2. <u>Barr's wrongdoing precludes injury</u>: The JCBC Defendants next argue that Barr's procedural due process claims fail because student barbers worked in her shop without a journeyman barber present and thus predeprivation notice would not have helped Barr achieve a different outcome. As the JCBC Defendants note, "[u]nless a person asserts some basis for contesting a deprivation of life, liberty, or property, he is not injured by defective procedures he has no occasion to invoke." *See Rector v. City & Cty. of Denver*, 348 F.3d 935, 943–44 (10th Cir. 2003).

But Barr contests the factual allegation that she allowed student barbers to practice without supervision. Barr points out that Paulding testified only that Smith and his friends were "sitting in chairs" and that Paulding "does not remember" whether Smith was cutting hair without a supervisor present. *See* Doc. 106-2 at 17. And Barr contends that the JCBC had no authority to fine her for having a student barber braid hair without supervision because regulations on braiding hair fell within the Cosmetology Board's purview. Barr also asserts that a predeprivation hearing may have allowed her to convince the JCBC that it could compel her compliance with its regulations through less severe measure than the padlocking of her

6

businesses. Based on these disputed facts, the court finds that a reasonable juror could decide that the lack of predeprivation notice injured Barr.

3. Notice was given: The JCBC Defendants also argue that they provided Barr with due process because she met with the JCBC multiple times and had a hearing with her attorney present. But the first closure of Barr's businesses occurred before Barr and her attorney met with the JCBC. And the relevant state statute requires the JCBC, before revoking a barber's license, to provide the licensee with at least twenty days written notice of the scheduled hearing. *See* ALA. CODE § 45-37-40.04(d). The JCBC has failed to point to evidence that it complied with this requirement at any point before shuttering Barr's businesses. In fact, they cite no evidence about what was said at these meetings or what evidence the JCBC allowed Barr to present in her defense. The court therefore concludes that there is at least a question of fact about whether the JCBC Defendants provided Barr with sufficient predeprivation process before any of the three closures of her businesses.

4. Failure to exhaust: The JCBC Defendants finally argue that Barr's procedural due process claims should be dismissed because she failed to exhaust her state court remedies. But the Eleventh Circuit has determined that the availability of postdeprivation state court remedies do not prevent Barr from succeeding on her procedural due process claims. *See Barr v. Johnson*, 777 F. App'x 298, 302–03 (11th Cir. 2019). So the mandate rule prohibits the court from granting the JCBC

7

Defendants summary judgment on this basis. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018).

Because none of the JCBC Defendants' arguments entitle them to summary judgment on the procedural due process claims, their motion for summary judgment on Counts 1 and 4 will be denied.

### B. Barr is not entitled to summary judgment.

Barr argues that she is entitled to summary judgment based on the first closure of her businesses. The Eleventh Circuit has instructed the court to consider the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), when reviewing this claim. The *Mathews* factors include (1) the private interest that the official action will affect; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See id.*

Having considered these three factors, the evidence, and Barr's arguments in favor of summary judgment, the court determines that it should deny Barr's motion. Although the JCBC Defendants failed to provide Barr with a full-blown evidentiary hearing before first closing her businesses, they did send Barr a notice asking her to appear at the JCBC's office the next day with a list of the student barbers working

for her. And presumably Barr had at least some discussion with the commissioners before asking that they postpone the hearing until she could obtain counsel. To be sure, these procedures likely violated the Alabama statutory requirements that govern the JCBC. *See* ALA. CODE § 45-37-40.04(d). But the court is unprepared to hold that, as a matter of law, these statutory provisions reflect the minimum requirements of the Constitution. To the point, the court thinks that whether the JCBC Defendants provided Barr with sufficient predeprivation due process before the initial closure of her businesses is a fact question for a jury. So the court will deny Barr's motion for partial summary judgment.

**II.     The court will dismiss Barr's intentional interference with business relationship claim for the barber shop but not the beauty salon.**

The court next addresses Barr's intentional interference with business relationship claim against Johnson and Paulding (Count 6).

Under Alabama law, the elements of a claim for wrongful interference with business relationship are "(1) the existence of a [protectable] business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). Johnson and Paulding argue that the court should grant them summary judgment on Barr's intentional interference with business relationship claim because: (1) they did not intentionally interfere with

Barr's business relationships, (2) they were justified in their actions, and (3) they were not strangers to Barr's relationships with her customers.

1. No intentional interference / justification: Johnson and Paulding argue that they did not intentionally interfere with Barr's business relationships and/or they were justified in their actions because, in their view, Barr admits she violated the law and that they provided Barr with a meeting where she was represented by counsel. But as explained in Part I, the JCBC's first closure of Barr's businesses happened before the hearing with Barr and her attorney. And the JCBC Defendants have failed to show that, as a matter of law, they provided Barr with adequate process before the second and third closures of her businesses. There is also at least a fact dispute over whether Barr violated the JCBC's rules regarding student barbers. So these arguments fail to establish that the court should grant Johnson and Paulding summary judgment on the intentional interference with business relationships claim.

2. Not strangers: A defendant is a participant in—not a stranger to—a business relationship if "(1) [she] is an essential entity to the purported business relations; (2) the allegedly injured relations are inextricably a part of or depend upon [her] contractual or business relations; (3) [she] would benefit economically from the alleged injured relations; or (4) both [she] and the plaintiff are parties to a comprehensive interwoven set of contracts or relations." *Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1156 (Ala. 2003) (quoting *Britt/Paulk*

*Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996). In other words, a defendant participates in a business relationship if she "has any beneficial or economic interest in, or control over, that relationship." *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004) (citation omitted).

Johnson and Paulding were participants in Barr's relationship with her barbershop customers. The whole reason that Barr could service these customers at her Center Point shop was that she maintained a license from the JCBC. Johnson, as the chair of the JCBC, had direct control over whether Barr could obtain and maintain her license. And Paulding, as a JCBC inspector, had the authority to issue citations that could lead to the revocation of Barr's barber license. Thus, Barr depended, at least in part, on Johnson and Paulding to work as a barber in Jefferson County. The court will therefore grant Johnson and Paulding's motion for summary judgment on the interference with business relationship claim related to their alleged interference with Barr's relationship with her barbershop customers.

But the court will deny Johnson and Paulding's motion for summary judgment on the interference with business relationship claim related to their alleged interference with Barr's relationship with her beauty salon customers. Barr has presented evidence that the Alabama State Board of Barbering and Cosmetology—not the JCBC—had authority to regulate her beauty salon, so there is at least a fact

11

question about whether the JCBC participates in her relationship with her beauty salon customers.

### III. The negligent hiring, training, and supervision claim against Johnson is no longer pending.

The court finally turns to Johnson's motion for summary judgment on Barr's negligent hiring claim (Count 3). Johnson argues that this claim is due to be dismissed because Alabama law does not recognize a supervisor's negligent training or supervision of a subordinate. Barr responds that she has stated a viable negligent hiring claim against Johnson because she has sued Johnson in her official capacity, so she is bringing the negligent hiring claim against the JCBC, not Johnson.

The court needn't address these arguments, however, because the court dismissed Count 3 in a previous order, *see* Doc. 35 at 22–25, and Barr failed to ask the court to reinstate this count when the Eleventh Circuit remanded this case for further proceedings. *See* Doc. 92 at 7–8. So the court did not reinstate Count 3 upon remand. *See* Doc. 100 at 1. As the reasons for the court's dismissal of Barr's negligent hiring claim had nothing to do with the issues litigated in the Eleventh Circuit, the court finds that Count 3 should remain dismissed. As a result, the portion of the JCBC Defendants' motion for summary judgment related to the negligent hiring claim is moot.

## CONCLUSION

In summary, the court **DENIES** Barr's motion for summary judgment (doc. 106). The court **GRANTS in part** and **DENIES in part** the JCBC Defendants' motion for summary judgment (doc. 108) as follows:

- Counts 1 and 4 (procedural due process): Denied.
- Count 3 (negligent hiring, training, supervising): Denied as moot.
- Count 6 (interference with business relationship): Granted related to barbershop customers, denied as to beauty salon customers.

**DONE** and **ORDERED** this September 28, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE