FILED

2020 Nov-23  PM 05:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANDRE' TOFFEL,** *Bankruptcy Trustee for the Estate of Geta Barr*, | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: 2:16-cv-01340-CLM** |
| **JEFFERSON COUNTY BARBER COMMISSION, et al.,** | ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Geta Barr sued two sets of defendants—the JCBC Defendants (the Jefferson County Barber Commission, Florence Johnson, and Trina Paulding) and the Center Point Defendants (the City of Center Point, Thomas Henderson, John Wood, and John Watkins)—for shuttering her beauty salon and barbershop businesses in 2014. The Eleventh Circuit reversed this court's dismissal of Barr's procedural due process claims (doc. 87-1). To comply with the Eleventh Circuit's mandate, this court has had to sort out various issues on remand. The only remaining claims left unresolved before trial are claims against the three remaining Center Point Defendants—the City of Center Point, Henderson, and Watkins.

For the reasons stated within, Center Point's motion for summary judgment on the procedural due process claims against it will be **DENIED**; Henderson and

Watkins's motion for summary judgment on the procedural due process claims against them will be **GRANTED**; Henderson's motion for summary judgment on the intentional interference with business relationship and trespass claims against him will be **GRANTED**; and Watkins's motion for summary judgment on the intentional interference with business relationship and trespass claims against him will be **DENIED**. Barr's motions to strike (docs. 65 & 66) will be **DENIED as MOOT**.

The court will set for trial all claims not disposed of by this opinion or a previous order.  The court includes a list of these claims in its conclusion.

## BACKGROUND

### I.      Statement of the Facts

Geta Barr is a businessowner who operated a barbershop at 1687 Center Point Parkway and a beauty salon and tax preparation business at 1849 Center Point Parkway. In August 2014, the JCBC issued Barr multiple citations for inadequately supervising student barbers at her barbershop. The JCBC then summoned Barr to the Barber Commission office where the JCBC commissioners began to ask her questions. Barr asked that the JCBC postpone the meeting until she could obtain counsel, and the commissioners told Barr that the JCBC would reschedule the meeting.

But soon after Barr's meeting with the JCBC, Trina Paulding, a JCBC inspector, met with Center Point mayor Thomas Henderson about Barr's citations. Henderson told Paulding that Center Point "would cooperate with the Barber Commission." Doc. 63-2 at 17. Then Paulding along with Center Point building inspectors John Woods, John Watkins, and Wayne Plunkett went to Barr's businesses where they chain locked the doors and left cease and desist notices.

Barr then obtained counsel, who convinced the JCBC to re-open Barr's businesses after she paid a $250 fine. The Center Point City Council then held a hearing about Barr's business licenses on October 9. Barr and her attorney both attended the hearing. At the hearing, Barr's attorney explained that he thought Barr had resolved her issues with the JCBC regarding student barbers but that Center Point had issues with Barr's use of six non-permitted signs. The Councilmembers then discussed that Center Point could require Barr to produce records of revenue. At the close of the hearing, Barr's attorney requested that the City Council list actions that Barr needed to take and said that Barr would present evidence of compliance at the next City Council meeting. The City Council then voted to allow Barr "until Friday, October 17, 2014, at 5:00 PM to comply with all city ordinances." Doc. 61-6 at 6.

On October 17, members of the Center Point Inspections Department, including John Watkins, put cease and desist notices on the doors of both of Barr's

businesses. But, at that point, the City Council had passed no new resolution finding Barr noncompliant with city ordinances.

Six days later, the City Council met again and granted Barr until 1:00 PM on October 31 to present all required information. The Council explicitly noted that if Barr was "not in compliance at that time, the resolution to revoke the business licenses will go into effect." Doc. 61-7 at 3. Barr could not produce a requested 2010 tax return by October 31st, so she met with Henderson and asked him if she could have an extension to produce the tax return. Henderson told her that he could do nothing because "the order [was] already out." Doc. 61-3 at 36. Members of the Center Point Inspections Department then came to chain lock Barr's businesses. And Barr now no longer has a journeyman barber's license from the JCBC.

## II.    Procedural History

Barr originally filed this suit in 2016. Counts 1, 4, 7, 9, and 12 alleged violations of Barr's right to procedural due process. Counts 2, 5, 8, 10, and 13 alleged violations of Barr's substantive due process rights. In Count 3, Barr brought a failure to adequately hire, train, discipline, and supervise claim against Johnson. In Count 6, Barr brought an intentional interference with business relationship claim against Johnson and Paulding. In Count 11, Barr brought a failure to adequately train, discipline, and supervise claim against Henderson. In Count 14, Barr brought an interference with business relationship claim against Henderson, Wood, and

Watkins. In Count 15, Barr brought a trespass claim against Henderson, Wood, and Watkins. And in Count 16 Barr brought an agency claim against Center Point.

Soon after filing suit, Barr voluntarily dismissed Wood as a defendant. Doc. 18. The court then granted the JCBC and Paulding's motion to dismiss the procedural and substantive due process claims brought against them (Counts 1–2, 4–5). Doc. 35. The court also granted Johnson's motion to dismiss the negligent hiring claim brought against her (Count 3). *See id.* Following discovery, Center Point, Henderson, Watkins, Johnson, and Paulding moved for summary judgment on Barr's remaining claims. Docs. 61, 62. The court granted Center Point, Henderson, and Watkins summary judgment on the procedural and substantive due process claims against them (Counts 7–10, 12–13) and dismissed with prejudice the state-law agency claim (Count 16). Docs. 76, 77. The court then declined to exercise supplemental jurisdiction over the remaining state-law claims (Counts 6, 11, 14–15) and remanded those claims to state court. Docs. 76, 77.

Barr appealed the dismissal of her procedural due process claims. The Eleventh Circuit reversed, reasoning that Barr had stated a viable procedural due process claim for at least the first closure of her businesses. *See* Doc. 87-1. But the circuit court declined to address the merits of Barr's procedural due process claims over the second and third closure of her businesses. *See id.* Nor did the court reach

Henderson and Watkins's argument that they are entitled to qualified immunity on the procedural due process claims brought against them. *See id.*

Upon remand, the court reinstated all procedural due process claims against all defendants and allowed Barr and the JCBC Defendants to cross move for summary judgment. Doc. 100. Following the filing of the cross motions for summary judgment, it emerged that Barr had filed for Chapter 7 bankruptcy. So the court substituted the bankruptcy trustee, Andre' Toffel, as the plaintiff.[1] Doc. 126. The court then ruled on the cross motions for summary judgment, granting Paulding and Johnson's motion for summary judgment on the interference with business relationship claims related to Barr's barbershop customers but denying the motions in all other respects. Doc. 127.

Following the ruling on the summary judgment motions related to the JCBC Defendants, the court directed the Center Point Defendants and the trustee to file supplemental briefing on the Center Point-related issues. Doc. 128. The parties have completed the supplemental briefing, so the Center Point-related issues are now ripe for this court's review.[2]

---

[1] Even though the bankruptcy trustee is now litigating this case, the court calls Barr the plaintiff throughout this memorandum opinion for ease of reference.

[2] The trustee's supplemental brief confirmed that he is no longer pursuing a negligent training claim against Henderson. *See* Doc. 130 at 4–5. So the court issued an order dismissing Count 11. Doc. 131.

## STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The court still has to rule on these claims:

- Count 7: the procedural due process claims against Center Point related to the second and third closures of Barr's businesses;

- Counts 9, 12: the procedural due process claims against Henderson and Watkins;

- Counts 14, 15: the intentional interference with business relationship and trespass claims against Henderson; and,

- Counts 14, 15: the intentional interference with business relationship and trespass claims against Watkins.

Below the court addresses each claim in turn.

**I.    Center Point is not entitled to summary judgment on the procedural due process claims against it.**

Center Point first argues that it is entitled to summary judgment on the procedural due process claims brought against it for the second and third closures of Barr's businesses. To make out a procedural due process claim, a plaintiff must show: "(1) a deprivation of constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). In its motion for summary judgment, Center Point argued that Barr's procedural due process claim failed because Barr did not capitalize on available post-deprivation state law remedies. *See* Doc. 61 at 17–19. But as the Eleventh Circuit has held, Barr's procedural due process claims fall under the general rule that "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Barr v. Johnson*, 777 F. App'x 298, 302 (11th Cir. 2019) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). So Barr's failure to seek out post-deprivation remedies does not doom her procedural due process claims.

Instead, the Eleventh Circuit has instructed the court to consider the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), when evaluating Barr's procedural due process claims. The *Mathews* factors include (1) the private interest that the official action will affect; (2) the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See id.* On remand, Center Point argues that it satisfied the *Mathews* factors before the second and third closures of Barr's businesses because it provided Barr with a hearing before these closures of her businesses. Doc. 129 at 2–3.

The court is unconvinced that the mere fact that Barr and her attorney appeared at a business license hearing before the Center Point City Council establishes that Center Point provided Barr with adequate procedural due process before the second and third closures of her businesses. To be sure, at the October 9 hearing, the City Council informed Barr that her businesses would be closed unless she complied with Center Point's requirements by October 17. But the City Council never held a hearing following the October 17 deadline to determine whether Barr had addressed all issues raised at the business license hearing. Nor did the City Council adopt a new resolution explicitly finding Barr noncompliant before Center Point closed Barr's businesses on October 17. And although before the October 31 closure of her businesses Barr admitted to Henderson that she could not produce a requested 2010 tax return, no evidence suggests that Center Point offered Barr a chance to explain her inability to produce the tax return before the third closure of

her businesses. The court finds that a reasonable jury could conclude that Center Point's procedures were constitutionally inadequate. So the court will deny Center Point's motion for summary judgment on the procedural due process claims related to the second and third closures of Barr's businesses.

## II.    Henderson and Watkins are entitled to qualified immunity.

Henderson and Watkins each seek qualified immunity on the procedural due process claims brought against them. Qualified immunity protects government officials from being sued in their individual capacities so long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

### A.    Scope of Discretionary Authority

An official acted within the scope of his discretionary authority if he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b)

through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). In her response in opposition to the Center Point Defendants' summary judgment motion, Barr argued that Henderson acted outside the scope of his discretionary authority because he "had no authority, discretionary or otherwise, to chain lock a business or deprive owners of property contained within their business." Doc. 63 at 27. But the scope of discretionary authority "inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Instead, the court must "ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (quotations and citations omitted).

The court finds that Henderson's actions were reasonably related to his job as mayor of Center Point. Henderson's involvement with the first closure of Barr's businesses was agreeing to cooperate with the JCBC and directing Paulding to coordinate with the Inspections Department. And Henderson's involvement in the second and third closures relate to the enforcement of the City Council's October 9 and 23 resolutions. As the Center Point Defendants have argued, "[a]ny action which Mayor Henderson takes in supervising City employees, working in conjunction with the City Council, or dealing with businesses within the City are necessarily discretionary functions taken in his role as mayor." Doc. 61 at 22. So Mayor

Henderson has met his burden under the first prong of the qualified immunity analysis.

The court also finds that Watkins acted within the scope of his discretionary authority when he participated in chain locking Barr's businesses and signing the cease and desist letters placed on her business's doors. As a Center Point City Inspector, it was Watkins's job to make sure that businesses comply with Center Point ordinances and regulations. While Barr may disagree with the lawfulness of Watkins's conduct, he acted in pursuit of a job-related goal.

**B.    Clearly Established Law**

So the court next considers whether Henderson and Watkins violated clearly established law. "A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (internal quotations and citations omitted). A right may be clearly established in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement or principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence

of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (internal citations omitted).

Although the procedures afforded Barr before the second and third closures of her businesses may have been constitutionally inadequate, the court finds that Henderson and Watkins are entitled to qualified immunity on the procedural due process claims related to these closures. Before these two closures, the Center Point City Council invited Barr and her attorney to a business license hearing where they discussed Barr's need to comply with Center Point regulations. The City Council then gave Barr an October 17 deadline to comply. Only after this October 17 deadline passed did Henderson and Watkins participate in the second closure of Barr's businesses. And only after Barr failed to produce the 2010 tax return by a new October 31 deadline to produce all requested documents did Henderson and Watkins participate in the third closure of Barr's businesses. A reasonable official could view the notice and hearing that Center Point provided Barr before these two closures and not have understood that these procedures may be constitutionally inadequate. So Henderson and Watkins are entitled to qualified immunity on the procedural due process claims related to the second and third closures of Barr's businesses. *See Mikko*, 857 F.3d at 1146.

Whether Henderson and Watkins are entitled to qualified immunity for the procedural due process claims related to the first closure of Barr's businesses

presents a closer call because there was no hearing before this closure of Barr's businesses. But Barr has not pointed to a directly on-point case in which officials who acted like Henderson and Watkins were found to have violated a plaintiff's procedural due process rights. And "[t]hough *Mathews v. Eldrige* can require pre-deprivation process, that is not always the case." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019) (citations omitted). So the court is unconvinced that every reasonable official would have understood that not providing Barr with a pre-deprivation hearing before the initial closure of her businesses violated her procedural due process rights. The court thus finds that Henderson and Watkins are also entitled to qualified immunity on the procedural due process claims related to the initial closure of Barr's businesses.

In short, the court has found no case with similar enough facts that would have put Henderson and Watkins on notice that their actions violated Barr's constitutional rights. So Henderson and Watkins are entitled to qualified immunity on the procedural due process claims against them.

## III.   Henderson is entitled to state-agent immunity.

Henderson asserts that he enjoys state-agent immunity from the intentional interference with business relationship and trespass claims brought against him. The Alabama Supreme Court has established a burden-shifting process that governs the assertion of state-agent immunity. Under this framework, the state agent bears the

initial burden of showing that he was engaged in a function that creates state-agent immunity. *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). These functions include:

- the formulating of plans, policies, or designs;

- exercising judgment in the administration of a department or governmental agency, for example, allocating resources and supervising personnel;

- discharging duties imposed on a department or agency by statute, rule, or regulation in the manner prescribed by the statute, rule, or regulation;

- exercising judgment in the enforcement of criminal laws; and

- exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*See Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).

Once the state agent has met his initial burden, the burden shifts to the plaintiff to show that one of the two exceptions to state-agent immunity applies. *See Ex parte Kennedy*, 992 So. 2d 1276, 1282–83 (Ala. 2008). These exceptions prevent a government employee from invoking state-agent immunity:

- when the Constitution or laws of the United States, the Constitution of Alabama, or the laws, rules, or regulations of Alabama enacted or promulgated for regulating the activities of the governmental agency require otherwise; or

- when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman*, 792 So. 2d at 405.

Henderson's involvement with the closures of Barr's businesses relate to the exercising of judgment in the administration and supervision of the Center Point Inspections Department. So he has met his initial burden to show that he was engaged in an immunized function. *See id.*

The burden thus shifts to Barr to show that one of the two *Cranman* exceptions to state-agent immunity applies. Barr argues that she has met this burden by presenting evidence that Henderson "acted willfully, maliciously, in bad faith, and beyond his authority when he authorized the City Inspection Department to chain and lock [her] business doors on three separate occasions without a court order and in violation of the City's own ordinances." Doc. 63 at 30. But the acts that Barr points to in support of her state law claims against Henderson are that he (1) facilitated the Inspections Department's cooperation with the JCBC's initial closure of Barr's businesses and (2) signed the cease and desist notice that led to the third closure of Barr's businesses after she informed him that she could not produce the requested 2010 tax return by the City Council's October 31 deadline. This conduct does not support a finding that Henderson acted willfully, maliciously, in bad faith,

or beyond his authority. So the court grants Henderson state-agent immunity on the intentional interference with business relationship and trespass claims against him.

## IV.     The court will deny Watkins's motion for summary judgment on the state-law claims against him.

The court finally addresses the intentional interference with business relationship and trespass claims against Watkins.

### A.     State-agent Immunity

In their supplemental briefing on remand, the Center Point Defendants have argued that Watkins, like Henderson, is entitled to state-agent immunity on the state law claims against him. *See* Doc. 95 at 1 n.1, Doc. 129 at 5. But when the Center Point Defendants originally moved for summary judgment, only Henderson asserted the state-agent immunity defense. *See* Doc. 61. And the Center Point Defendants' reply brief failed to respond to Barr's argument that Watkins waived the right to assert a state-agent immunity defense by failing to raise it in the summary judgment motion. *See* Doc. 63 at 32 n.5, Doc. 68. State-agent immunity is an affirmative defense. *See Ex parte Sawyer*, 984 So. 2d 1100, 1107 (Ala. 2007). So the court finds that by failing to raise state-agent immunity in his motion for summary judgment Watkins has waived the right to assert state-agent immunity at the summary judgment stage.

**B.     Intentional Interference with Business Relationship**

The court thus turns to the merits of the intentional interference with business relationship claim against Watkins. Under Alabama law, the elements of a claim for wrongful interference with business relationship are "(1) the existence of a [protectable] business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). But even if a plaintiff establishes these elements, justification is an affirmative defense to a tortious interference claim. *See id.* at 12.

Watkins argues that he is entitled to summary judgment on the intentional interference claim because no evidence shows that he intended to interfere with Barr's business relationships and/or he was justified in his actions because he was merely enforcing resolutions of the Center Point City Council. Watkins signed cease and desist letters placed on the doors of Barr's businesses and participated in the chain locking of her barbershop and beauty salon. The natural consequence of these actions is that Barr would be prevented from servicing customers at her businesses (at least temporarily). So the court rejects Watkins's argument that no reasonable juror could find that he intentionally interfered with Barr's business relationships with her beauty salon and barbershop customers.

And fact disputes surrounding the adequacy of the procedures that Center Point afforded Barr before the closure of her businesses precludes summary judgment based on the affirmative defense of justification. As explained above, there was no hearing before the first closure of Barr's businesses. And although the City Council ordered Barr to comply with its ordinances, there was no resolution before the second closure of Barr's businesses that explicitly found her noncompliant. Nor did the City Council allow Barr to explain why she could not produce the 2010 tax return that led to the third closure of her businesses. A reasonable juror could view this evidence and determine that the closures of Barr's businesses, which Watkins participated in, were not justified.[3]

## C.      Trespass

The court next turns to the trespass claim against Watkins. A defendant is liable for trespass if he intentionally: (1) enters land in the possession of another; (2) causes a thing or third person to enter another's land; (3) remains on the land; or (4) fails to remove a thing from the land that he has a duty to remove. *See Rushing v. Hooper McDonald, Inc.*, 300 So. 2d 94, 96 (Ala. 1974). Watkins argues that he is entitled to summary judgment on the trespass claim because he was present at Barr's

---

[3] When originally briefing the summary judgment motions, Barr moved to strike Henderson, Watkins, Johnson, and Paulding's assertion of the affirmative defense of justification. Docs. 65, 66. Because the court rejects the justification defense on the merits, it **denies as moot** Barr's motions to strike. If Watkins, Johnson, or Paulding reassert the justification defense at trial, Barr will have leave to renew her motion.

businesses to enforce Center Point City Council resolutions not to engage in a "wrongful act to intentionally intrude upon . . . Barr's possessory interest." Doc. 61 at 34.

But a defendant needn't intend to intrude upon another's possessory interest to be liable for trespass. *See W.T. Ratliff Co. v. Henley*, 405 So. 2d 141, 146 (Ala. 1981). Instead, the intent required is "the *intent to do the act* which leads to the trespass." *See id.* And as Barr argues, a reasonable juror could find that Watkins acted wrongfully because (a) there was no court order to shutter Barr's businesses, and (b) Center Point may have provided Barr with inadequate process before Watkins arrived to chain lock the doors to Barr's barbershop and beauty salon.

### D.    Individual vs. Official Capacity

Watkins finally argues that the court should grant him summary judgment on the state-law claims because Barr sues Watkins in his individual capacity for conduct related to his official job duties. According to Watkins, a plaintiff cannot bring individual capacity claims against a government employee for acts taken because of his job position. In support of this argument, Watkins points to Justice Murdock's concurring opinion in *Morrow v. Caldwell*, 153 So. 3d 764, 772–74 (Ala. 2014) in which he stated that a municipal employee's personal liability depends "on the existence of a duty that was personal to the employee (not merely a duty of his or

her employer) and that ran to the plaintiff (and not merely from the employee to his or her employer)."

But Justice Murdock's opinion in *Morrow* was not dealing with the question of when it is appropriate to bring an individual capacity suit against a government officer. Instead, the question in *Morrow* was whether the $100,000 statutory cap on suits against municipalities applies to claims asserted against employees in their individual capacity. *See id.* So the court finds the *Morrow* concurrence to have little applicability to Watkins's argument that he should not be liable in his individual capacity. Besides, Barr has not merely alleged that Watkins is liable because of actions his employer took to close her businesses. Instead, she has argued that Watkins is liable for intentional interference with her business relationships and trespass because ***he personally*** chain locked her businesses and signed cease and desist letters placed on her businesses' doors. Given that plaintiffs often sue government officials in their individual capacities for actions that they would have not taken but for their jobs, the court rejects Watkins's argument that it was inappropriate to sue him in his individual capacity. The court will deny Watkins's motion for summary judgment on the intentional interference with business relationship and trespass claims.

## **CONCLUSION**

In summary, the court will: **DENY** Center Point's motion for summary judgment on the procedural due process claims against it; **GRANT** Henderson and Watkins's motions for summary judgment on the procedural due process claims against them; **GRANT** Henderson's motion for summary judgment on the intentional interference with business relationship and trespass claims against him; and **DENY** Watkins's motion for summary judgment on the intentional interference with business relationship and trespass claims against him. The court will also **DENY as MOOT** Barr's motions to strike (docs. 65 & 66).

The claims set for trial are as follows:

- Count 1: procedural due process claims against the JCBC;

- Count 4: procedural due process claims against Paulding;

- Count 6: intentional interference with business relationship claims against Johnson and Paulding related to Barr's beauty salon customers;

- Count 7: procedural due process claims against Center Point;

- Count 14: intentional interference with business relationship claims against Watkins; and,

- Count 15: trespass claims against Watkins.

By separate order, the court will carry out these findings.

**DONE** this November 23, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE